IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | |
| JONATHAN P. QUINN, ) | Case No. 07-11290 (BLS) |
| CHRISTINA E. QUINN, ) | |
| ) | |
| _____ Debtors. ) | **Docket Reference No. 126, 127 and 129** |
| ) | |

**MEMORANDUM ORDER REGARDING MOTION
TO RECONSIDER AND AMEND JUDGMENT**

Upon consideration of the Motion to Reconsider and Amend Judgment [Docket No. 129] (the "Motion to Reconsider") filed by Ciappa Construction and Michael Ciappa (hereinafter "Movants") and the Debtors' Response in opposition thereto; and the Court having conducted a hearing on the Motion to Reconsider; and it appearing to the Court that the Movants have not demonstrated cause for reconsideration of the denial of their motion to dismiss; and it further appearing to the Court that cause does exist for the Court to reconsider and to amend its prior ruling as to allowance of the Ciappa's claim; and based upon the record in these proceedings, the Court FINDS as follows:

1. Following an evidentiary hearing, the Court issued its Opinion and Order (hereinafter the "Opinion") [Docket Nos. 126 and 127] denying Movants' motion to dismiss these Chapter 11 proceedings. The Court also therein approved for confirmation the Debtors' proposed modified Chapter 13 plan [Docket No. 97], and granted Movants' request for leave to amend their claim to assert an unsecured claim against the Debtors in the amount of $151,247.17.

2. Following entry of the Opinion, and within the time permitted under applicable provisions of the Federal Rules of Bankruptcy Procedure, Movants filed the Motion to

Reconsider, contending that the Court had erred in finding that the Debtors had commenced these Chapter 13 proceedings in bad faith. More specifically, the Movants contend that the Court's denial of the Motion to Dismiss was improperly predicated upon "acquiescence" by other creditors to the Debtors' filing.

3. The decision whether to permit the Debtors to remain in bankruptcy, and thus to deny the Motion to Dismiss, must necessarily be informed by <u>all</u> of the facts and circumstances surrounding the commencement and prosecution of the case. See In re Myers, 491 F.3d 120, 125 (3d. Cir. 2007).

4. In the instant case, the Court heard evidence regarding the Debtors' conduct leading up to and following the commencement of this case, as well as the economic factors confronting the Debtors:

> Notwithstanding their sordid dealings with Ciappa, the record reflects that the Quinns legitimately needed the protection afforded by bankruptcy when they filed. The existence of multiple other creditors and the total dollar amount of those creditors' claims removes much of the suspicion as to the timing and purpose of the Quinns' petition. Hazeldell was about to be sold at a sheriff's sale: filing for bankruptcy represented a logical course of action for the Quinns at that juncture.

In re Quinn, 2009 WL 5216893, at *7 (Bankr. D. Del. 2009).

5. The Court therefore determined that certain undisputed facts – <u>viz.</u>, the presence of a number of claim holders and the prospect of imminent foreclosure – supported the conclusion that the filing of the Debtors' bankruptcy case was not in bad faith. That determination was not predicated upon any finding that creditors other than the Ciappas had "acquiesced" in the filing or in their proposed treatment under the Plan, and the Opinion simply recites that the Ciappas were the sole remaining objector to confirmation of the Plan. <u>Id.</u>

6. In the Opinion, the Court also allowed a claim asserted by Movants, over Debtors' objection, in the amount of $13,829.29 relating to costs of cleanup and repair to Hazeldell. These costs were incurred due to damage to Hazeldell, on a post-petition, pre-confirmation time frame, caused primarily by the Debtors' decision to leave 16 large dogs unattended in the property in February, 2008.

7. It is well-settled that a debtor's post-petition, pre-confirmation conduct may give rise to liability of an administrative priority status. In re StemBridge, 287 B.R. 658 (Bankr. N.D. Tex. 2002) ("This is not to say that an estate may not be liable on a cost basis for tortious harm to a creditor's collateral. As Reading teaches, an estate representative's post-petition tort gives rise to a claim under § 503(b)(1)." (citing Reading Co. v. Brown, 391 U.S. 471 (1968))).

8. Here, the Court has found, after a trial on the merits and testimony from all interested parties, that the Debtors caused extensive damage to the property either deliberately or with conscious disregard for the property of another:

> When Ciappa purchased Hazeldell at the sheriff's sale, it purchased Hazeldell in the condition that it was in at that time, not subsequent to the Quinns extensively damaging it. It is axiomatic that a buyer at a sheriff's sale takes the property in the condition in which it is left. However, Jonathan Quinn testified that much of the damage he and Christina Quinn did to Hazeldell occurred immediately after the sheriff's sale. Specifically, the damage that was most expensive, degrading, and time-consuming to clean up was caused by the Quinns' imprisoning sixteen dogs in a relatively small basement immediately before the Quinns vacated Hazeldell. The Quinns therefore cannot hide behind the fact that purchasers at a sheriff's sale take property "as-is" to escape the consequences of their actions.

In re Quinn, 2009 WL 5216893, at *7 (Bankr. D. Del. 2009) (emphasis in original).

9. As noted, the Court previously allowed Ciappas' claim for cleanup and repair

costs, and ruled that that amount would be added to the Ciappas' general unsecured claim. Quinn, 2009 WL 5216893, at *10.

10. Upon review and reconsideration of the relief accorded in the Opinion, the Court has determined that the cleanup and repair costs must be accorded administrative priority, rather than be treated as a component of the Ciappas' general unsecured claim, for purposes of Debtors' Plan.

BASED UPON THE FOREGOING, IT IS HEREBY

ORDERED and ADJUDGED, that Movants' request for reconsideration of the Order denying dismissal of this Chapter 13 case is DENIED; and it is further

ORDERED and ADJUDGED, that the Opinion is hereby reconsidered and amended (i) to fix Movants' unsecured claim in the amount of $137,417.88 and (ii) to allow Movants an administrative priority claim against the Debtors in the amount of $13,829.29.

Dated: Wilmington, Delaware
March 26, 2010

Brendan Linehan Shannon
United States Bankruptcy Judge